IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS K. KELLY, et al.                :

                                               :

    v.                                  : Civil Action No. DKC 2006-0014

                                               :

THOMAS AARON BILLIARDS, INC.,
 et al.                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark infringement case is the motion of Defendant Thomas Aaron Billiards, Inc. for summary judgment. (Paper 75). The issues are fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the motion will be granted.

## I. Background

Defendant Thomas Aaron Billiards, Inc. ("TAB") is a corporation that manufactures and sells billiard tables and equipment. TAB sells its products under its own name and under private label. Plaintiff Douglas K. Kelly t/a Liberty Billiards is a member of Liberty Group, an association of billiard table retailers.[1] TAB is not a member of Liberty Group. Plaintiff

---

[1] The corporate status of Liberty Group is unclear. The complaint characterizes Liberty Group as an "unincorporated buying association of merchants" (paper 39 ¶ 4), but Plaintiff testified in his deposition that Liberty Group was incorporated in Georgia (paper 75, Ex. C, Kelly Dep., at 9-10).

claims, and TAB does not dispute, that Plaintiff owns the trademark LIBERTY BILLIARDS.[2]

In 2004, TAB entered into an oral agreement with Liberty Group to manufacture billiard tables affixed with the LIBERTY BILLIARDS mark, for sale only to members of the Liberty Group.  (Paper 75, Ex. C, Kelly Dep., at 19-20).  TAB manufactured several hundred private-labeled tables for Liberty Group and began selling them to members.  On April 19, 2005, Thomas Cartwright, TAB president, wrote a letter to Plaintiff explaining that Liberty Group members were not buying enough billiard tables to make the agreement profitable for TAB.  (Paper 75, Ex. 1).  TAB asked that each Liberty Group member commit to purchasing 10-15 tables per month. (*Id.*).  Liberty Group never responded to the letter.  (Paper 75, Ex. C, Kelly Dep., at 21-22).  TAB then sold the remaining tables to non-Liberty Group retailers.

There is conflicting testimony about whether the tables that TAB sold to non-Liberty Group retailers bore the LIBERTY BILLIARDS mark.  James Graven, owner of Steepleton Billiards, a non-Liberty Group retailer, testified that he purchased fifteen tables from TAB that bore the LIBERTY BILLIARDS trademark.  (Paper 75, Ex. E,

---

[2]  Plaintiff, apparently in error, attached to the complaint the certificate of registration for the mark CHAMPION BILLIARDS. TAB does not challenge Plaintiff's ownership of the LIBERTY BILLIARDS mark and a search of the United States Patent and Trademark Office Trademark Database (TESS) reveals that the word mark LIBERTY BILLIARDS, serial number 76498256, is registered in the name of Douglas K. Kelly.

Graven Dep., at 10-11).  Mr. Graven stated that his company removed the LIBERTY BILLIARDS nameplates and replaced them with Steepleton Billiards nameplates prior to selling them to the public.  (*Id*. at 13).  Mr. Cartwright stated that the tables TAB sold to Steepleton Billiards did not bear the LIBERTY BILLIARDS mark.  (Paper 75, Ex. D, Cartwright Dep., at 39).

The sale of the LIBERTY BILLIARDS branded tables to unauthorized retailers forms the basis for the present lawsuit. Plaintiff filed a complaint on January 4, 2006 against Defendants TAB, Thomas Cartwright, C.C. Steepleton Billiards, and James P. Graven, alleging trademark infringement (count I) and unfair competition and passing off (count II).[3]  Plaintiff filed an amended complaint, adding a new Defendant, The Billiard Connection. The court dismissed The Billiard Connection for lack of personal jurisdiction.  Thus, the only remaining defendants are TAB and C.C. Steepleton Billiards.  TAB filed the instant motion for summary judgment on January 26, 2007.  (Paper 75).  C.C. Steepleton Billiards has neither answered the amended complaint nor moved for summary judgment at this time.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material

---

[3]    In his opposition memorandum, Plaintiff voluntarily dismisses his claims against Graven and Cartwright.  (Paper 77, at 12).

fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her

4

responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Summary judgment may be granted in a trademark dispute when the material, undisputed facts disclose a likelihood of confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 935 (4th Cir. 1995).

## III.  Analysis

Plaintiff asserts in count I that TAB's sale of billiard tables bearing the LIBERTY BILLIARDS mark to retailers who were not members of Liberty Group constituted trademark infringement, in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

"To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a

likelihood of confusion." *CareFirst of Md., Inc. v. First Care, P.C.,* 434 F.3d 263, 267 (4th Cir. 2006) (quoting 15 U.S.C. § 1114(1)(a)).

TAB argues that it is entitled to summary judgment under the "genuine goods rule." That is, TAB argues that it did not infringe Plaintiff's trademark rights because it did not sell a product with a "reproduction, counterfeit, copy, or colorable imitation" of Plaintiff's mark, rather it sold authentic TAB tables with a genuine LIBERTY BILLIARDS mark.[4] "As a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (citing *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.), *cert. denied*, 484 U.S. 851 (1987)).

The *Shell Oil* court undertook a two-step process to determine whether the genuine goods rule applied to the defendant's sale of the plaintiff's bulk oil using the plaintiff's actual trademark, even though the defendant was not an authorized distributor. First, to determine whether trademark law applied, the court analyzed whether the product sold by the defendant was "genuine." The court found that because the defendant did not distribute the

---

[4] TAB maintains that it did not sell any tables bearing the LIBERTY BILLIARDS mark, but argues that even if it did sell tables with the mark, those sales did not infringe Plaintiff's trademark rights because of the genuine goods rule.

product using the plaintiff's quality control standards, the product was not truly "genuine," thus implicating the plaintiff's right under the Lanham Act to retain control of the use of its trademark in the sale of the product to the end user. *Shell Oil*, 928 F.2d at 107.  Second, the court considered whether the defendant's sale of the bulk oil under the plaintiff's actual trademark created a likelihood of customer confusion.  The court noted that the "issue of confusion is key because liability under the Lanham Act for trademark infringement is predicated on the use of a registered trademark that is likely to cause confusion." *Id.* at 108 (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980)) (internal quotation marks omitted).

Thus, the first step is to determine whether the billiard tables sold by TAB were "genuine" goods.  It is undisputed that Plaintiff contracted with TAB to manufacture tables affixed with the LIBERTY BILLIARDS mark and TAB then sold some of these tables to retailers who were not members of the Liberty Group.  Plaintiff does not claim to have a trademark in the design of the tables. (Paper 75, Ex. C, Kelly Dep., at 43).  Plaintiff asserts for the first time in his opposition memorandum that Liberty Group had a "consistent installation and customer service program" that TAB "violated and endangered" by the sale of the tables to retailers who were not members of the Liberty Group.  (Paper 77, at 8-9). The complaint, however, does not allege that Liberty Group engaged

7

in any post-manufacture quality control.  The sole reference in the
complaint to quality control procedures alleges that: "[p]rior to
the branding of any product with the Liberty Billiard name, it
undergoes a review process among Liberty Group members and requires
the majority voting approval of Liberty Group members prior to the
acceptance of the product to be branded under the Liberty
Billiards' name."  (Paper 39 ¶ 30).  The billiard tables at issue
in this case underwent this voting approval process.  (Paper 75,
Ex. C, Kelly Dep., at 19-20).  The only evidence of Liberty Group's
alleged post-manufacture quality control procedures is the
affidavit of Plaintiff, attached to the opposition, which states:

> the Liberty Group strives to ensure top
> quality customer service and employees [sic]
> only trained pool table installers and each
> Liberty Group member is encouraged and
> required to follow-up with each customer who
> purchases a Liberty Billiard product to ensure
> customer satisfaction and also immediately
> address any warranty issues which may arise
> regarding the product sold by the Liberty
> Group branded with the Liberty Billiards'
> trademark plates.

(Paper 77, Ex. J, Kelly Aff. ¶ 4).  This statement is simply too
general to establish that the trademark holder, Plaintiff, has
implemented meaningful post-manufacture quality control procedures
for LIBERTY BILLIARDS tables, such that any table not adhering to
those procedures is not a genuine LIBERTY BILLIARDS table.  In
contrast, in *Shell Oil*, the plaintiff provided specific examples of
the ways that the defendant did not adhere to its quality control

standards, such as hauling the bulk oil immediately after hauling diesel fuel without cleaning the tanker between loads. *Shell Oil*, 928 F.2d at 106 n.2.  The record thus demonstrates that the tables sold by TAB were genuine goods and thus their sale to non-Liberty Group retailers did not implicate trademark law.

More importantly, even if the tables were not "genuine", there was no likelihood of customer confusion as to the tables' origin. Plaintiff identified the relevant "customer" as the general public, not billiard table retailers.[5]  There can be no likelihood of confusion by a member of the general public because there is no evidence that any billiard table bearing the LIBERTY BILLIARDS mark was sold to the public by a non-Liberty Group retailer.  The evidence indicates that the LIBERTY BILLIARDS marks were removed from the tables by the non-Liberty Group retailers prior to their sale to the public.  (*See* paper 75, Ex. E, Graven Dep., at 13 (testifying that Steepleton Billiards removed the LIBERTY BILLIARDS identification plates prior to sale); paper 77, Ex. I, Brint Dep., at 31 (testifying that tables purchased from TAB had no identification plates)).  TAB's sale of billiard tables that were, or had previously been, branded with the LIBERTY BILLIARDS mark to

---

[5] "[Defendants'] use of Liberty Billiards' branded tables and/or accessories will cause confusion *among the general public* that the products being sold by [Defendants] have met with the Liberty Billiards' level of approval and/or that [Defendants] are authorized members and/or representatives of the Liberty Group and/or Liberty Billiards." (Paper 39 ¶ 34) (emphasis added).

retailers who were not members of the Liberty Group did not constitute trademark infringement in violation of 32(1) of the Lanham Act, 15 U.S.C. § 1114.   Accordingly, TAB is entitled to summary judgment on count I, trademark infringement.

Count II alleges that TAB engaged in "passing off and/or false advertising" in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by selling the tables to unauthorized retailers. The test for claims under § 43(a) of the Lanham Act is whether there is a likelihood of confusion.  *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir.), *cert. denied*, 506 U.S. 862 (1992).  Again, because there is no evidence that the tables were sold to the general public with the LIBERTY BILLIARDS mark, there can be no likelihood of confusion.  TAB is entitled to summary judgment on count II.

## IV.  Conclusion

For the foregoing reasons, TAB's motion for summary judgment will be granted on all counts.[6]  A separate Order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge

---

[6] Although C.C. Steepleton Billiards has not moved for summary judgment, the claims against it may suffer the same fate.  The court will convene a telephone conference to discuss how best to resolve those claims.